J.E. HECKER and Jane Hecker,
Plaintiffs–Respondents,

v.

MISSOURI PROPERTY INSURANCE
PLACEMENT FACILITY,
Defendant–Appellant.

Calvin E. COOK and Karen L. Cook,
Plaintiffs–Respondents,

v.

Gene CURTIS, Defendant–Appellant,

and

Missouri Property Insurance Placement
Facility, Defendant–Respondent.

No. 76975.

Supreme Court of Missouri,
En Banc.

Jan. 24, 1995.

Wendell W. Crow, Kennett.

Elizabeth A. Blaich, Poplar Bluff, for Gene Curtis.

Daniel T. Moore, Poplar Bluff, for J.E. and Jane Hecker.

LIMBAUGH, Justice.

These consolidated appeals concern the issuance of property insurance by the Missouri Property Insurance Placement Facility (the Facility). In the *Hecker* case, the trial court held that a one-year Facility policy automatically renewed and therefore covered J.E. and Jane Heckers' (the Heckers) cabin when destroyed by a fire that occurred after the expiration of the one-year term. In the *Cook* case, the trial court held that a similar Facility policy did not automatically renew and therefore did not cover a house trailer owned by Calvin and Karen Cook (the Cooks) when it was destroyed by fire after the expiration of the original term. However, the court did hold that independent insurance agent Gene Curtis (Curtis), representing the Cooks, negligently failed to submit to the Facility an application for renewal of the policy. Both the Facility and Curtis appealed to the Court of Appeals, Southern District. The appeals were consolidated and thereafter transferred by the Court of Appeals to this Court. We now reverse in the *Hecker* case, and affirm in part and reverse in part in the *Cook* case.

I.

*Hecker case*

In 1982, the Heckers, through independent insurance agent Dean Woods (Woods), applied to the Facility for property insurance on a cabin they owned in Ripley County. Upon expiration of the initial one-year policy, the Heckers submitted a renewal application and acquired a new one-year policy. They renewed in like manner for each year thereafter through 1989. The policy in question was issued for a term commencing on November 11, 1989, and ending November 11, 1990.

On or about September 14, 1990, the Facility sent a "general endorsement" notice to the Heckers indicating a $12.00 premium increase. The Heckers promptly paid the increase, but made no subsequent payments, even after expiration of the policy on November 11, 1990. At trial the Facility contended that it sent an "Expiration Notice" to the Heckers on July 7, 1990. However, the Heckers testified that they received neither a notice of expiration nor a notice of cancellation or nonrenewal.

On August 28 or 29, 1991, more than nine months after expiration of the policy, the cabin was destroyed by fire. Woods submitted a loss report and claim to the Facility on behalf of the Heckers. When the Facility

denied the claim, the Heckers filed this suit. The trial court held that the insurance policy was automatically renewed and was not subject to termination unless the Facility gave notice of cancellation or notice of nonrenewal.

### Cook case

On January 15, 1988, the Cooks, through independent insurance agent Gene Curtis, applied to the Facility for property insurance to cover their house trailer located in Wayne County. The policy was issued for a period of one year, commencing on January 15, 1988, and ending on January 15, 1989.

In early September, 1988, the Facility sent an "expiration notice" to Curtis setting forth the expiration date of the Cooks' policy. In part, the notice stated: "This is the only notice you will receive. Your insured is not being advised of this expiration. Please submit request for renewal no less than 30 days prior to the application." The Facility sent no notice whatsoever to the Cooks, and at no time did Curtis inform the Cooks that he received the expiration notice.

Between November 1988, and January 15, 1989, Mr. Cook attempted to contact Curtis seven or eight times to obtain information about renewing his insurance coverage. Cook and Curtis conversed "[m]aybe twice," but on neither occasion did Curtis tell Cook that he would submit an application to renew Cook's insurance policy. Instead, Curtis provided Cook with the toll-free telephone number for the Facility's office in St. Louis.

Cook called the Facility on Friday, January 13, 1989 to renew his policy, and was informed that his application and premiums would have to be received by the following day. Nevertheless, the Cooks made no attempt to send in an application or premiums. On January 15 or 16, 1989 the Cooks' trailer was completely destroyed by fire. Mr. Cook submitted a loss report and claim with the Facility. The Facility denied the claim, and the Cooks filed this suit.

The trial court held that the policy had expired without being renewed, and therefore, the loss was not covered. The court also held, however, that Curtis breached his duty as agent for the Cooks by failing to notify them in a timely manner of his decision not to submit a renewal application on the Cooks' behalf. This failure, the trial court determined, deprived the Cooks of a reasonable opportunity to obtain the services of another broker or otherwise obtain insurance coverage prior to the expiration of the policy.

## II.

The Facility is established under §§ *379.810* to *379.880, RSMo 1986,* for the purpose of providing property insurance on otherwise uninsurable properties. Coverage is not automatic, but requires an application from the property owner and a property inspection. § *379.825.* Even after application, the Facility can deny coverage based on the condition of the property. § *379.830.* Similarly, the Facility can impose a surcharge or require improvements to the property before issuing coverage. *Id.* Facility policies can be written only for a term of one year. § *379.840.*[1]

The issue common to both appeals is whether an insurance policy issued by the Facility expires at the end of its one-year policy term even though the Facility sent no notice of nonrenewal or cancellation. *Section 379.845.2, RSMo 1986,* the statute pertaining to notice of nonrenewal or cancellation, states as follows:

> Any notice of cancellation or notice of nonrenewal of a policy ... shall be sent to the insured.... Any such notice shall be sent not less than thirty days prior to the cancellation or nonrenewal of any risk under the program to allow ample time for an application for new coverage to be made and a new policy to be written under the program.

The Facility and Curtis contend that renewal is not automatic and that the statute requires notice of nonrenewal only when the Facility makes a decision not to renew the policy. They explain that renewing the policy is the same as initiating a new policy, the only difference being that, on application for

1. For detailed background on the Facility, *see* *Wells v. Missouri Property Insurance Placement Facility,* 653 S.W.2d 207, 211–12 (Mo. banc 1983); 12 U.S.C. § 1749bbb, et seq.

renewal, the Facility can reject the application only by notifying the applicant at least 30 days before the existing policy expires. On the other hand, the Heckers and Cooks, citing *Stevenson v. Missouri Property Insurance Placement Facility*, 770 S.W.2d 288 (Mo.App.1989), and *Grice v. Missouri Property Insurance Placement Facility*, 827 S.W.2d 287 (Mo.App.1992), contend that renewal is automatic unless the Facility sends a notice of nonrenewal at least 30 days in advance of the expiration date.

*Stevenson* assumed, without analysis, that the Facility's policies automatically renew, indefinitely. Most of the cases *Stevenson* cites are from other states and turn on statutes requiring the insurer to send an offer to renew. *Stevenson*, 770 S.W.2d at 289–91. Missouri law does not require the Facility to send an offer to renew, but instead requires the insured to reapply. *Grice*, in turn, relied entirely on *Stevenson*. *Grice*, 827 S.W.2d at 288.

■ Under the plain language of the statute, a notice of *cancellation* is required only when the Facility intends to discontinue coverage of the insured during the term of the policy. A notice of *nonrenewal*, on the other hand, applies only to the beginning of a new one-year term. Though not specifically defined in §§ *379.810, et seq.*, "nonrenewal" is defined elsewhere as:

> the determination of an insurer not to issue or deliver a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer or a certificate of notice extending the term of a policy beyond its policy period or term.

§§ *379.882(5), RSMo Supp.1993* and *375.001(3), RSMo 1986.* Nonrenewal is a determination by the insurer not to issue a new policy upon the expiration of an existing policy. If, however, the Facility makes no decision as to the renewal of a policy, there is neither a cancellation nor a nonrenewal, and therefore, no notice is required.

In sum, § *379.845.2* requires the Facility to send a notice of nonrenewal only if the Facility intends to reject an application for renewal. Otherwise, the burden is on the insured to apply for renewal and purchase a new one-year policy. In this case, the Heckers' policy for 1989–90 expired at 12:01 A.M. on November 11, 1990, as set forth in the policy, and the Cooks' policy expired at 12:01 A.M. on January 15, 1989. In each case, the Facility properly denied coverage. *Stevenson* and *Grice* are overruled.

### III.

■ A second issue raised in the *Cook* case is whether Curtis had a duty to submit a renewal application on behalf of the Cooks before expiration of their original policy. Curtis contends that he owed no duty to the Cooks to either procure a renewal of their insurance or notify them that he would not submit a renewal application on their behalf. In part, he argues that any agency relationship between himself and the Cooks terminated upon procurement of the original policy. We find this point dispositive.

■ In an action for negligence, plaintiff must establish that defendant had a duty to plaintiff, that defendant failed to perform that duty, and that defendant's breach was the proximate cause of plaintiff's injury. *Martin v. City of Washington*, 848 S.W.2d 487, 493 (Mo. banc 1993). An insurance agent who undertakes to procure insurance for a party, with a view to earning a commission, becomes the party's agent and, in part, owes a duty to timely notify that party if he fails to procure such insurance. *Zeff Distributing Co. v. Aetna Casualty & Surety Co.*, 389 S.W.2d 789, 795 (Mo.1965). *See also Couch on Insurance 2d*, § 25:47 at 371–72. An agency relationship and any corresponding duty, however, is not continuing; rather, it ceases on execution and delivery of the policy to the insured. *Pringle v. Aetna Life Ins. Co.*, 123 Mo.App. 710, 101 S.W. 130, 131 (1907); 44 C.J.S. Insurance § 211 at 404.

■ Curtis represented the Cooks in originally obtaining property insurance for their trailer. After obtaining and delivering that policy, the agency relationship between Curtis and the Cooks no longer existed. Mr. Cook testified that he contacted Curtis about renewing the policy for the first time in December, 1988. In response, Curtis informed Mr. Cook that he would not submit a

renewal application on the Cooks' behalf. Because an insurance policy that renews a prior policy is a separate and distinct contract, *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 705 (Mo. banc 1984), an agreement by Curtis to procure a new policy is a prerequisite to liability. The Cooks offered no evidence that, at any time, Curtis offered or agreed to procure a renewal policy for the Cooks. To the contrary, the trial court concluded that in late November or early December 1988, Curtis explicitly informed the Cooks of his decision not to submit a renewal application on their behalf. On this basis, we find that Curtis never undertook to renew the Cooks' property insurance, and thus owed no duty to timely notify them of his decision.

### IV.

In the *Hecker* case, the judgment is reversed and remanded with directions that the trial court enter judgment for the Facility. In the *Cook* case, the judgment in Count I in favor of the Facility against Calvin and Karen Cook is affirmed; the judgment in Count II in favor of Calvin and Karen Cook against Gene Curtis is reversed and remanded with directions that the trial court enter judgment in favor of Gene Curtis.

All concur.